Estate of Henrietta Snell, deceased, Albert W. Adcock et al., Executors, Appellants, v. Home Mutual Building Loan Association et al., Appellees.

Gen. No. 14,514.

1. CONVEYANCES—*how language of construed*. Language in a deed must be construed most strongly against the grantor.

2. CONVEYANCES—*effect of receiving, subject to encumbrances*. A grantee does not become personally obligated to the payment of an encumbrance subsisting against the property where the language of the deed is as follows: "Said grantee assumes all encumbrances which is now of record against said property."

Contested claim in court of probate. Appeal from the Circuit Court of Cook county; the Hon. RICHARD S. TUTHILL, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1908. Reversed and remanded with directions. Opinion filed June 4, 1909.

**Statement by the Court.** Albert W. Adcock, and others, executors of the last will and testament of Henrietta Snell, deceased, on September 29, 1904, filed a petition in the Probate Court of Cook county, where the estate of the decedent was pending, alleging that a claim allowed against the estate, on September 24, 1909, for $4,762.10 in favor of the Home Mutual Building and Loan Association of Racine, Wisconsin, had been paid and should be satisfied. It was also alleged that Frank G. Wright and Susan F. Gunsolus claimed to be the owners of the claim. The petition prayed for a hearing; that the claim might be found and decreed to be paid, and for general relief.

Wright and Gunsolus answered and it appears from their answers that Susan F. Gunsolus alone claimed to be the owner of the claim.

On April 18, 1905, the Probate Court denied the prayer of the petition. From that order the executors appealed to the Circuit Court. In the latter court a jury was waived and the cause submitted to the court. On November 9, 1907, the Circuit Court rendered a judgment denying the prayer of the petition and dis-

missed the petition, at the costs of the executors, to be paid in due course of administration. From that judgment the executors are now prosecuting this appeal. ✦

The claim, allowed on September 24, 1901, originated in a note, bond, and mortgage upon some Wisconsin land, executed and delivered to the Building Association; not, however, by Henrietta Snell.

Grace S. Coffin made her note and bond, dated October 21, 1898, evidencing her indebtedness to the Association. The note and bond were secured by the above mentioned mortgage, executed by her, dated October 21, 1898, and recorded October 24, 1898. By a warranty deed dated December 1, 1898, Grace S. Coffin and her husband, upon a stated consideration of $10,000, conveyed the mortgaged property to Henrietta Snell. In that deed two clauses appear which are as follows: "Said grantee assumes all encumbrances which is now of record against said property," and "In the event of the death of the said grantee Henrietta Snell, during the life time of said grantor Grace S. Coffin, the title to said premises shall revert to and vest absolutely in the said Grace S. Coffin, her heirs and assigns forever."

Subsequently, on February 24, 1900, Henrietta Snell died and under the provision in the aforementioned deed the title to the land reverted to Grace S. Coffin. While she, Grace S. Coffin, held the title to the property the Building Association's claim was proved up against the estate of Henrietta Snell, on September 24, 1901, for $4,762.10, as already stated, and, an appeal being prosecuted in the Circuit Court, that court entered judgment upon the claim for $4,871.20, on March 8, 1902. During the time she held the title Grace S. Coffin also created other encumbrances upon the property, but we are not concerned with these in the present controversy except for the purpose of differentiation from the one now before us.

On August 30, 1902, by a contract bearing that date, Mrs. Coffin contracted to sell the property to Herbert Hammond, who acted for his wife, Florence E. Ham-

mond. In that contract three mortgages are mentioned as existing upon the property, but nothing is said with reference to the Building Association mortgage. That mortgage was, however, then of record as a lien upon the property and, furthermore, Hammond testified that he knew of the mortgage and bought the property knowing the mortgage was there. But, he said, Mrs. Coffin told him that her mother had assumed that debt. The deed from Mrs. Coffin to Mrs. Florence E. Hammond, made to carry out the contract with Mr. Hammond, is dated and acknowledged August 29, 1902, was recorded on September 2, 1902, and recites a consideration of $15,000. It was testified that the actual consideration was $10,000.

On March 2, 1903, Mrs. Hammond paid the Building Association its claim, had the note and bond marked paid, obtained and recorded a release of the mortgage, and took an assignment of the claim or judgment of the Building Association against Henrietta Snell's estate to one Frank G. Wright. Wright transferred the assignment of the judgment to Susan F. Gunsolus, sister of Mr. Hammond. Wright paid nothing for the transfer to him and what, if any, consideration Susan F. Gunsolus gave for the assignment to her does not appear. That is, however, immaterial. Mr. Hammond sold the premises to one Joseph C. Yeager on or about October 30, 1903.

GEORGE A. TRUDE and M. MARSO, for appellants.

RITSHER, MONTGOMERY, HART & ABBOTT, for appellees.

MR. JUSTICE CHYTRAUS delivered the opinion of the court.

The disposition of this case depends wholly upon the situation of Mrs. Coffin, at her mother's death, with reference to the property and the indebtedness upon the Building Association mortgage. Mrs. Hammond took title with both actual and constructive notice. Wright, it appears, acted for and on behalf of

Mrs. Hammond. We consider the claim in the hands of Susan F. Gunsolus precisely the same as if it were held by Mrs. Hammond. Originally Mrs. Coffin devoted the property to the payment of the indebtedness. We know nothing about the consideration in the transaction whereby the property passed from Mrs. Coffin to her mother, except that it recited a consideration of $10,000, and it appears that Mrs. Snell, as purchaser and as part of the transaction, assumed the Building Association mortgage, then of record against the property. The deed between the parties stated that she assumed it as an ''encumbrance'' of record *against the property*. The assumption, in this form, cannot be separated from but must be taken as part of the consideration for the property. As between these two parties the property was the primary fund for the payment of this indebtedness. Mrs. Snell received from Mrs. Coffin the land burdened with the encumbrance. Had no mention been made, in the deed, of the encumbrance, the encumbrance, as between the two, would not have followed the land, but it would have been Mrs. Coffin's legal duty to relieve the land therefrom. For the title to the land, burdened, Mrs. Snell paid $10,000. She assumed the encumbrance but she did not agree to pay to the Building Association the debt as an obligation of her own. Other than as an encumbrance she did not, as between the two, by the particular language used, assume any liability by reason of the indebtedness of Mrs. Coffin, her grantor. Had Mrs. Snell died the day after she received the title, Mrs. Coffin would not then have been entitled to a reversion of the property, free and clear of this encumbrance. From the language used in this instrument we are not justified in deducing any intention to pay. Such intention is not expressed therein and courts do not, under pretense of construction, add to the contracts that parties have themselves made. If Mrs. Snell had suffered the property to be foreclosed and sold in payment of the indebtedness, Mrs. Coffin would have been entitled to no remedy against Mrs. Snell upon this form of assumption. Mrs. Snell did

not covenant to pay the indebtedness. She merely, as part of the consideration, "assumed it, as an encumbrance * * * against the property." Mrs. Coffin, in her deed, inserted a provision that in the event she survived Mrs. Snell the title to the property should revert to her, Mrs. Coffin, the grantor. No language used in this provision for reversion expresses the idea that in case of the death of Mrs. Snell, the grantee, before the maturity of the encumbrance, the property should revert to Mrs. Coffin, free and clear of this encumbrance. We can imply no such idea or intention, merely from the provision that Mrs. Snell, in the purchase, assumed the encumbrance. By so doing we would imply a contract the parties did not make and that Mrs. Snell agreed to something which might be impossible of performance by her. Suppose the Building Association were not willing to accept payment otherwise than as it had contracted with Mrs. Coffin to be paid? Now that Mrs. Snell is dead, so that the property has reverted to Mrs. Coffin, no equitable consideration and no promise to pay the indebtedness, independent of the property, or to preserve the property for Mrs. Coffin, express or implied, appearing, we see no reason, legal or equitable, why Mrs. Coffin should recover from the estate of her mother the indebtedness to the Building Association. Language in a deed must be construed most strongly against the grantor. The deed we are now concerned with is Mrs. Coffin's deed. We cannot infer, from the language used, that it expresses on the part of Mrs. Snell an intention to pay Mrs. Coffin the amount of the consideration she did pay and, in addition, a promise to clear the property from encumbrance. There is certainly no language clearly expressing such promise. Mrs. Coffin, the maker of the deed, is entitled to no benefit from intendments and inferences, in her favor, in the construction of the language used. Mrs. Snell did not, according to the language used, assume the indebtedness, except as an encumbrance. So far as any promise to Mrs. Coffin, by reason of the language used in the deed, is concerned, Mrs. Snell might, by exten-

sion or otherwise, have continued the existence of the encumbrance .as long as she lived. Mrs. Coffin's conveyance of the property to another, under the circumstances here shown, gave that other no greater rights against Mrs. Snell than Mrs. Coffin herself had, in respect to that indebtedness.

We are of the opinion that the courts below have extended to the language used, as against Mrs. Snell, the grantee, a meaning greater than it can bear and imputed to her a promise beyond what the language of the deed fairly imports. Therefore the judgment of the Circuit Court is reversed, and this cause is remanded to the Circuit Court with directions to allow the prayer of the petition.

*Reversed and·remanded with directions.*